## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT LEE ALLEN,** | : | **CIVIL ACTION NO. 1:06-CV-0247** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE PENNSYLVANIA SOCIETY** | : | |
| **FOR THE PREVENTION OF** | : | |
| **CRUELTY TO ANIMALS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a § 1983 civil rights action brought by Robert Lee Allen ("Allen")

against certain state actors arising from their search of his property, seizure of his

farm animals, and prosecution of him for purported violations of Pennsylvania's

cruelty-to-animals statute.  Presently before the court are motions to dismiss filed

by defendants The Pennsylvania Society for the Prevention of Cruelty to Animals,

Inc. ("PSPCA"), and Elizabeth Pennell Hopkins ("Hopkins") (Doc. No. 27), and by

the Humane Society of Harrisburg Area, Inc. ("HSHA"), Deb Witmer ("Witmer"),

and Jill Troutman ("Troutman") (Doc. No. 28).  Also before the Court is a motion for

oral argument (Doc. No. 36) filed by defendants HSHA, Witmer, and Troutman.  For

the reasons that follow, the motions to dismiss will be granted in part and denied in

part, and the motion for oral argument will be denied as moot.

## I.   BACKGROUND[1]

### *Investigation into and subsequent search of Allen's farm*

Robert Lee Allen is a farmer who, for the past thirty years, has also been in the business of purchasing and rehabilitating livestock and horses.  (Doc. No. 20, ¶ 4.)  The animals Allen typically acquires for rehabilitation purposes are underweight, in poor physical condition, and suffer from long-standing medical issues.  (Id.)  Some of the animals can be rehabilitated and resold, but others are euthanized, slaughtered, or auctioned for slaughter.  (Id.)

On January 31, 2004, Witmer, an HSHA humane society police officer, received a telephone complaint regarding the condition of the horses and other livestock on Allen's farm.  (Doc. No. 20-2, at 2.)  The next day, Witmer and Hopkins, a PSPCA humane society police officer, visited Allen's property to investigate allegations that Allen's animals were malnourished and mistreated.  (Id.; Doc. No. 20, ¶ 23.)  During the visit, Hopkins expressed to Allen her opinion that the horses needed to be evaluated and treated by a veterinarian, and she and Allen agreed that a veterinarian would examine the animals on Tuesday, February 3, 2004.  (Doc. No. 20, ¶¶ 23-25.)  Neither Witmer nor Hopkins inquired how long Allen had owned the animals or what care and medications were being provided to them.  (Id. ¶ 23.)

---

[1] In accordance with the standard of review of a motion to dismiss, the court will present the facts alleged in the amended complaint in the light most favorable to the plaintiff and draw all reasonable inferences in his favor.  The statements in this section reflect neither the findings of the trier of fact nor the opinion of the court as to the truth of Allen's allegations.

On February 2, 2004, Witmer applied for and obtained a warrant from Magisterial District Justice Schulenberger to search Allen's property and to seize certain described animals as well "any and all animals of any species which appear to be the subject of a violation of the Cruelty to Animals Statutes." (Doc. No. 20-2.) In the affidavit of probable cause, Witmer detailed the January 31, 2004, citizen's complaint as well as her own observations of certain animals during her visit to Allen's farm. (Id. at 2.) The affidavit included no information about Allen's willingness to cooperate with authorities, how long he owned the animals, what care and medication the animals were receiving, or whether some or all were exempt from the cruelty-to-animals statute because they were animals used in a normal agricultural operation. (Doc. No. 20, ¶¶ 25, 49(A)-(C).)

Hopkins and Witmer executed the warrant on February 2, 2004, a day when they knew Allen would be away from his farm, and seized eight horses, four goats, and two pigs from Allen's property. (Id. ¶¶ 24, 26.) Hopkins and Witmer also brought "twenty five assorted and unnecessary individuals and entities with them when they executed the search warrant." (Id. ¶ 27.) Allen contends that these third-parties had "no legitimate purpose in being present to trespass upon [his] property and invade his privacy." (Id.) According to the complaint, most of the animals were not seen by a veterinarian until several days after their removal from his farm. (Id. ¶ 28.)

*Criminal proceedings against Allen in state court*

On February 10, 2004, Witmer filed approximately sixteen criminal citations

against Allen alleging cruelty to animals in violation of 18 Pa. Cons. Stat. § 5511(c).[2]

(Doc. No. 20, ¶ 29.)  Witmer withdrew the citations on March 17, 2004, and Hopkins

filed new citations against Allen, alleging essentially the same offenses.[3]  (Id. ¶¶ 30-

31.)  At the time Hopkins filed the citations, however, she was not properly

registered as a humane society police officer in Cumberland County and, therefore,

---

[2]  18 Pa. Cons. Stat. § 5511(c) provides, in relevant part:

(c) Cruelty to animals --
    (1) A person commits an offense if he wantonly or cruelly illtreats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.
    * * *
    (3) This subsection shall not apply to activity undertaken in normal agricultural operation.

Id. § 5511(c)(1), (3).  Additionally, 18 Pa. Cons. Stat. § 5511(i) empowers humane societies and their agents to initiate criminal proceedings.  Specifically, this subsection provides:

An agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of the Commonwealth, shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure. . . .

18 Pa. Cons. Stat. § 5511(i); see also id. § 5511(l) (addressing the authority of a humane society and its agents to obtain search warrants).

[3]  It appears that Witmer withdrew the charges because she intended to leave the Commonwealth of Pennsylvania.  (See Doc. No. 20, ¶ 30.)

4

had no authority to file the citations, a fact elicited during the cross-examination of

Hopkins at Allen's summary trial on the charges.  (Id. ¶¶ 31-32.)  On April 5, 2004,

Magisterial District Justice Schulenberger, who was presiding over the summary

trial, dismissed all of the citations against Allen because of this fatal flaw in Allen's

prosecution.  (Id. ¶ 33.)  Defendants did not appeal this decision.  (Id.)

The following day – April 6, 2004 – Hopkins filed fifteen new criminal

citations with Judge Schulenberger, despite the judge's statement the previous day

that she would not hear the charges again.  (Doc. No. 20, ¶¶ 35-36.)  Hopkins

withdrew the charges on April 8, 2004, only to file a new set of fifteen citations

alleging essentially the same offenses the same day.[4]  (Id. ¶ 37.)  Over Allen's

objections that this second proceeding violated his right to be free from double

jeopardy, Magisterial District Justice Bender held a summary trial and convicted

Allen of all fifteen charges.  (Id. ¶ 38.)  Judge Bender ordered that Allen forfeit

possession of the seized animals and make restitution to the Commonwealth in the

amount of $7,600.  (Doc. No. 27, Ex. E, at 62; Doc. No. 28, Ex. B, at 24.)

Allen appealed his conviction to the Court of Common Pleas of Cumberland

County.  In an order and opinion issued April 15, 2005, President Judge Hoffer

concluded that Allen's second summary trial was held in violation of 18 Pa. Cons.

---

[4] It appears that Hopkins had still not properly registered as a human society
police officer in Cumberland County when she filed the April 6, 2004, charges, thus
requiring their withdrawal and subsequent refiling on April 8, 2004, the day after
she had registered.  (See Doc. No. 20-3, at 3) (citing Order, Philadelphia County C.P.
Ct., October 31, 2000, recorded in Cumberland County, April 7, 2004).

Stat. § 109 (2004), which codifies the principles of double jeopardy under state law: "[J]eopardy attached to the first summary trial and, therefore, the dismissal prohibited the Commonwealth from subjecting [Allen] to another trial on the same charges."  (Doc. No. 20-3, at 3, 7-8.)

**_Allen's attempts in state court to have his property returned_**

Despite Allen's successful appeal of his convictions, Hopkins, PSPCA, and HSHA refused to return Allen's animals (Doc. No. 20, ¶ 41), prompting him to file a motion seeking their return pursuant to Pennsylvania Rule of Criminal Procedure 588.[5]  (Doc. No. 20, ¶ 42.)  On January 10, 2006, a hearing was held on Allen's Rule 588 motion before Judge Oler of the Cumberland County Court of Common Pleas, who granted the motion "to the extent that the Commonwealth is to compensate [Allen] the amount of $750 for the property seized."  (Doc. No. 20, ¶ 43; Doc. No. 27, Ex. G; Doc. No. 28, Ex. D.)  To explain the award of compensatory damages in lieu

---

[5]  Pennsylvania Rule of Criminal Procedure 588 provides as follows:

(A)   A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof.  Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B)   The judge hearing the motion shall receive evidence on any issue of fact necessary to the decision thereon.  If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

Pa. R. Crim. P. 588(A), (B).

of the return of any remaining livestock, Judge Oler opined "that to the extent any of the animals have been successfully restored to health their locations do not appear of record[6] and their quality in terms of personal property will have been so significantly changed as not to be equivalent to the property seized."  (Doc. No. 27, Ex. G; Doc. No. 28, Ex. D.)

Allen appealed Judge Oler's decision to the Superior Court of Pennsylvania. (Doc. No. 20, ¶ 47; Doc. No. 51-2, Ex. G.)  On appeal, Allen complained, inter alia, that Judge Oler erred "in finding that [Allen] would be fully compensated by an award of $750.00 when, in fact, the seized animals are alive and able to be returned to [him]," as required by the plain language of Rule 588 and "in not finding that the property seized by the Commonwealth and owned by [Allen] were non-contraband in nature pursuant to the Rules of Criminal Procedure."  (Doc. No. 51, at 5, 12, Ex. G.)

In a non-precedential superior court decision issued December 29, 2006, a panel composed of Judges Musmanno, Todd, and Tamilia concluded that the trial court had erred, but nevertheless affirmed the monetary award.  (Doc. No. 71, at 14, 18.)  The court explained:

---

    [6]  During this hearing, Hopkins "failed and/or refused to disclose the whereabouts of the animals; at another point, she stated that she did not know where they were," though she acknowledged that some had been euthanized.  (Doc. No. 20, ¶ 43.)  She also invoked her Fifth Amendment right to be free from self-incrimination when asked if she ever lied about any of the animals being deceased. (Id.)

> [B]ecause we conclude that the animals seized did, in fact,
> constitute derivative contraband, in that they were the
> subject of an unlawful act under 18 Pa.C.S.A. § 5511(c), we
> find that the trial court erred in concluding that they were
> not contraband; thus, [Allen] was entitled to nothing and, a
> fortiori, is entitled to no relief on appeal.  However as the
> Commonwealth did not appeal the trial court's award [of
> $750.00], we will not disturb it.

(Id. at 18.)  Allen's petition for allowance of appeal of this order to the Supreme

Court of Pennsylvania is currently pending.  (Doc. No. 73, Ex. C.)

**The instant litigation**

Allen commenced this suit on February 1, 2006 (Doc. No. 1), and he filed an

amended complaint on April 28, 2006 (Doc. No. 20).[7]  Allen's amended complaint

sets forth three counts: Count I is a claim under 42 U.S.C. § 1983 against all

defendants; Count II is a state-law claim for malicious prosecution against all

---

[7]  Defendants argue that Allen's amended complaint did not comply with
Federal Rule of Civil Procedure 15 and Local Rules 7.1 and 15.1.  (See Doc. No. 35,
at 15; Doc. No. 38, at 24.)  Federal Rule of Civil Procedure 15 provides that "a party
may amend the party's pleading . . . by leave of court."  Fed. R. Civ. P. 15.  Local
Rule 7.1 requires that all pretrial motions be in writing, and Local Rule 15.1
imposes an obligation on parties seeking leave to amend a pleading to include the
proposed amended pleading as an exhibit to their motion seeking leave to amend.
L.R. 7.1 and 15.1(a).
    Under the circumstances of this case, the court finds defendants' procedural
arguments to be misplaced.  By order dated April 21, 2006, the court specifically
granted Allen leave to file an amended complaint on or before May 1, 2006.  (Doc.
No. 19, at 3.)  In that order, the court noted that "counsel agree that plaintiff shall
have additional time to file an amended complaint" (see Doc. No. 18) and "that
granting of an enlargement of time to file an amended complaint is in the interests
of justice and may resolve the pending motion."  (Doc. No. 19.)  Allen filed his
amended complaint before the court's May 1st deadline.  (See Doc. No. 20.)
Accordingly, defendants' arguments based on failure to comply with Federal Rule
of Civil Procedure 15 and Local Rules 7.1 and 15.1 are without merit.

defendants; and Count III is a claim under § 1983 against the PSPCA and HSHA for inadequate training and supervision.  (Doc. No. 20.)  However, within these three counts (and particularly Count I), Allen alleges numerous distinct violations of his Fourth, Fifth, and Fourteenth Amendment rights arising from defendants' search of his property, seizure and retention of his farm animals, and repeated efforts to criminally prosecute him.  (Id.)  Allen arguably sets forth a state-law defamation claim, based upon his allegations that defendants communicated defamatory statements about him to others while acting on behalf of the PSPCA and/or HSHA (id. ¶ 39), and a state-law civil conspiracy claim, based upon his averments that various defendants conspired to cause his injuries (see id. ¶¶ 16, 21, 56).  Allen seeks actual, consequential, treble, and punitive damages, as well as damages for pain and suffering, inconvenience, attorneys' fees, and "such additional relief as this Honorable Court may deem appropriate."  (Id. at 16, 18, 21.)

On May 15, 2006, defendants moved to dismiss Allen's amended complaint on numerous grounds (Doc. Nos. 27, 28) and shortly thereafter filed supporting briefs and sought oral argument on the motions (Doc. Nos. 35, 36, 38).  Allen subsequently filed his opposition.  (Doc. Nos. 49, 50.)  Defendants filed reply briefs (Doc. Nos. 53, 54), and the court permitted Allen to file sur-reply briefs (Doc. Nos. 58, 60, 61). Following the superior court's affirmation of the $750 award on Allen's Rule 588 motion, defendants were permitted to file supplemental briefs in support of their motions (Doc. Nos. 69, 70, 71, 72), to which Allen responded (Doc. Nos. 73, 74). Defendants subsequently filed supplemental reply briefs (Doc. Nos. 78, 80), the last

of which was filed on April 13, 2007.  Thus, the motions to dismiss have been fully

briefed and are ripe for disposition.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

complaint, <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993), and is properly

granted when, taking all factual allegations and inferences as true, the moving party

is entitled to judgment as a matter of law.  <u>Markowitz v. Northeast Land Co.</u>, 906

F.2d 100, 103 (3d Cir. 1990).  Although the court is generally limited in its review to

the face of the complaint, it "may also consider matters of public record, orders,

exhibits attached to the complaint and items appearing in the record of the case."

<u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d. Cir. 1997);

<u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

The moving party bears the burden of showing that no claim has been stated.

<u>Johnsrud v. Carter</u>, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must

show that the plaintiff has failed to "set forth sufficient information to outline the

elements of his claim or to permit inferences to be drawn that those elements exist."

<u>Kost</u>, 1 F.3d at 183 (citations omitted).  The court, in turn, must "examine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to

relief."  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233 (3d Cir. 2006) (quoting

<u>Delaware Nation v. Pennsylvania</u>, 446 F.3d 410, 415 (3d Cir. 2006)).  In so doing, the

court "need not credit a complaint's 'bald assertions' or 'legal conclusions[.]'"

<u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906, 908 (3d Cir. 1997).  Rather, a

court must only determine "whether the claimant is entitled to offer evidence to support the claims." <u>Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.</u>, 280 F.3d 278, 283 (3d Cir. 2002) (citing <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1420).

Additionally, the court notes that there is no heightened pleading standard in § 1983 actions; rather, the general and less stringent requirements of Federal Rule of Civil Procedure 8 apply. <u>See</u> <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993); <u>Alston v. Parker</u> 363 F.3d 229, 233 (3d Cir. 2004) ("[A] heightened pleading requirement for civil rights complaints no longer retains vitality under the Federal Rules.").

## III.   DISCUSSION

### A.   The *Rooker-Feldman* doctrine

Before discussing the merits of Allen's claims, the court will address the threshold issue of jurisdiction. <u>See</u> <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 389-90 (3d Cir. 2002) (noting the "duty of the federal courts to examine their subject matter jurisdiction at all stages of the litigation"). Defendants argue that under the *Rooker-Feldman* doctrine this court lacks jurisdiction over Allen's constitutional claims relating to the deprivation and retention of his animals. (<u>See, e.g.</u>, Doc. No. 38, at 40-42; Doc. No. 35, at 34-36.) For the reasons discussed below, the court disagrees and concludes that it has original subject-matter jurisdiction over the instant dispute.

The fundamental principle of the *Rooker-Feldman* doctrine – a jurisdictional consideration rooted in the Supreme Court decisions of <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983) – is "that a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings."[8] <u>Walker v. Flitton</u>, 364 F. Supp. 2d 503, 506-07 n.5 (M.D. Pa. 2005) (quoting <u>Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. and N.J. Police Dept.</u>, 973 F.2d 169, 179 (3d Cir. 1992)).  Recently, the Supreme Court confined the application of the *Rooker-Feldman* doctrine to those cases "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings and [4] inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005); <u>see</u> <u>Lance v. Dennis</u>, 546 U.S. 459, ---, 126 S. Ct. 1198, 1202 (2006) ("The doctrine applies only in 'limited circumstances' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.") (internal citation omitted); <u>see also</u> <u>Turner v. Crawford Square Apartments III, L.P.</u>, 449 F.3d 542, 547 (3d Cir. 2006) (cautioning against applying the *Rooker-Feldman* doctrine "beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases") (citation omitted).

---

[8] The *Rooker-Feldman* doctrine was crafted by the Supreme Court to preserve the appropriate channels of appeal from state-court judgments.  It arises from the "negative inference" of 28 U.S.C. § 1257, which vests appellate jurisdiction over state-court judgments solely in the United States Supreme Court.  <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 21 (1st Cir. 2005); <u>see</u> 28 U.S.C. § 1257.

The instant case does not fit within the contours of the *Rooker-Feldman*

doctrine as restated by the Court in <u>Exxon Mobil</u>.  Obviously, Judge Oler's order on

Allen's Rule 588 motion satisfies one element of the *Rooker-Feldman* standard

articulated in <u>Exxon Mobil</u> in that it was issued prior to the commencement of this

action.  However, it does not satisfy any of the remaning elements.  Allen was not a

state-court loser:  he filed a motion under Pennsylvania Rule of Criminal Procedure

588, and the court of common pleas granted the motion and awarded him relief,

albeit not the relief detailed in the rule itself.[9]  (Doc. No. 28, Ex. D); <u>see</u> Pa. R. Crim.

P. 588(B) (stating that "the property shall be restored . . ."); (Doc. No. 51, Ex. G)

(complaining on appeal to the superior court that the trial court erred in awarding

money in lieu of the property).  Second, the instant action seeks redress for injuries

which occurred before Judge Oler issued his order on Allen's Rule 588 Motion.

Specifically, Allen alleges that defendants unlawfully retained his property

beginning on April 5, 2004, when Judge Schulenberger dismissed the citations

against him.  (<u>See</u> Doc. No. 20, ¶ 41.)  Thus, Allen seeks recovery for injuries that

existed prior to and are separate and distinct from those addressed by the trial

court's order.  <u>See</u> <u>Turner</u>, 449 F.3d at 547 (emphasizing that the plaintiff must be

complaining of an injury caused by the state-court judgment itself); <u>see also</u> <u>Holt v.

---

[9]  Defendants argue that Allen was a state-court loser since his motion was
granted to a limited extent with Judge Oler ordering monetary compensation as
opposed to the return of the animals themselves.  (<u>See, e.g.</u>, Doc. No. 38, at 42) ("In
short, Allen . . . is unhappy with the $750 awarded as compensation for the property
seized.").

Lake County Bd. of Comm'rs, 408 F.3d 335, 369 (7th Cir. 2005) (plaintiff's action barred by *Rooker-Feldman* because "[plaintiff's] injury was caused by the state court judgments . . . [and] absent the state court's judgment . . . [plaintiff] would not have the injury he now seeks to redress."). Third, Allen is not asking this court to review and reject the judgment of the state court awarding him damages. Indeed, he raises federal claims that were never adjudicated as part of the Rule 588 proceedings. Although Judge Oler made various findings as part of his order on Allen's Rule 588 motion for return of seized property,[10] this court's adjudication of

---

[10]  Judge Oler made the following findings:

(1) that on February 2, 2004, an officer from the Harrisburg Humane Society seized eight horses, four goats, and two pigs from a farm in Cumberland County owned by Defendant . . . (2) that the animals were being kept by [Allen] for agricultural business purposes; (3) that at the time of the seizure . . . the animals found alive and seized were in dire need of veterinary attention; . . . (5) that . . . half of the horses and at least one pig could not be saved; (6) that to the extent any of the animals have been successfully restored to health their locations do not appear of record and their quality in terms of personal property will have been so significantly changed as not to be equivalent to the property seized, and (7) that the above-captioned prosecution of [Allen] for various counts of cruelty to animals was quashed on double jeopardy grounds . . . .

(Doc. No. 28, Ex. D.)  As the Third Circuit explained in Desi's Pizza, a court determining whether the *Rooker-Feldman* doctrine may require a finding that the prior state judgment was wrong depends on the "pillars on which the state-court judgment rests," or "the questions of state law that the state court was required to reach in order to render its decision." 321 F.3d at 421.  Under Rule 588, the trial court is to consider simply whether an individual is entitled to lawful possession of the seized property.  See Pa. R. Crim. P. 588(A), (B); (see also Doc. 28, Ex. D) (Judge Oler's order does not refer to any federal claims advanced by Allen).

14

Allen's federal claims will not "require the court to conclude that the State Court made an incorrect factual or legal determination," <u>Desi's Pizza v. City of Wilkes-Barre</u>, 321 F.3d 411, 421 (3d Cir. 2003), nor will federal relief prevent the state court's enforcement of its orders directing the Commonwealth to pay Allen $750. <u>See</u> <u>In re Knapper</u>, 407 F.3d 573, 580 (3d Cir. 2005); (Doc. No. 28, Ex. D) (trial court order); (Doc. No. 71, at 14-19) (superior court order).  Finally, the court notes that Allen has appealed Judge Oler's Rule 588 ruling through the appropriate channels – by taking an appeal to the Pennsylvania Superior Court (Doc. No. 51, Ex. G; Doc. No. 71, at 14-19), and by, more recently, petitioning the Pennsylvania Supreme Court for allowance of appeal (Doc. No. 73, Ex. C) – which weighs against defendants' arguments that Allen is improperly attempting to bring an appeal of Judge Oler's ruling before this court.

Defendants also contend the federal claims advanced by Allen are "inextricably intertwined" with the state adjudication.  (<u>See</u> Doc. No. 38, at 42; Doc. No. 35, at 36.)  To the extent this remains a viable analysis,[11] the court disagrees

---

[11] While the recent Supreme Court cases of <u>Exxon Mobil</u> and <u>Lance</u> did not discuss the "inextricably intertwined" inquiry, courts have "generally found a continued vitality to the jurisdictional bar to questions which are inextricably intertwined with state court decisions."  <u>Mangan v. Brierre</u>, No. 06-3204, 2007 WL 475820, at *4 & n.9 (E.D. Pa. Feb. 9, 2007) (discussing several circuit decisions to address the issue after <u>Exxon Mobil</u>); <u>see</u> <u>Knapper</u>, 407 F.3d at 581 (concluding, post <u>Exxon Mobil</u>, that the plaintiff's claim was "'inextricably intertwined' with the state adjudications and thus barred by *Rooker-Feldman*"); <u>see also</u> <u>Taliaferro v. Darby Twp. Zoning Bd.</u>, 458 F.3d 181, 192-93 (3d Cir. 2006) (discussing the "inextricably intertwined" inquiry but concluding that it did not apply under the facts of the case).  Some academics believe that <u>Exxon Mobil</u> relegated the "inextricably intertwined" analysis to a secondary role and that it is "no longer intended to be a

with defendants.  Federal claims are inextricably intertwined with a prior state court adjudication where "federal relief can only be predicated upon a conviction that the state court was wrong."  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006) (citation omitted).  As discussed above, this court's adjudication of Allen's federal claims will not require such a finding.  Moreover, when a federal plaintiff presents "some independent claim, albeit one that denies a legal conclusion that the state court has reached in a case to which he was a party . . . there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."  Exxon Mobil, 544 U.S. at 293 (citation omitted); see Turner, 449 F.3d at 547-48.  Here, Allen has stated Fourteenth Amendment due process violations, alleging that the state procedures for return of his animals were inadequate in his case.  (Doc. No. 49, at 32-33; see Doc. No. 20, ¶¶ 1, 41-47, 49, 57-58; Doc. No.49, 32-33); see also Krause v. Passaro, No. 3:03-505, 2005 WL 2300356, at *4 (M.D. Pa. Sept. 21, 2005) ("To maintain an action for intentional or negligent deprivation of property under section 1983, Plaintiff must show . . . [that] Plaintiff has no adequate post-deprivation state remedy to redress the wrong.").  Clearly, this claim is independent of those presented to Judge Oler during Allen's Rule 588 proceedings.

---

general or threshold test."  Thomas D. Rowe, Jr. & Edward L. Baskauskas, "Inextricably Intertwined" Explicable at Last?  Rooker-Feldman Analysis after the Supreme Court's Exxon Mobil Decision, 1 Fed. Cts. L.R. 367, 369 (2006); see, e.g., Turner, 449 F.3d 547-48 (concluding that Rooker-Feldman did not apply without engaging in an inextricably intertwined analysis).

16

Accordingly, the court concludes that the *Rooker-Feldman* doctrine does not act to deprive the court of its subject-matter jurisdiction over Allen's claims. Having satisfied its obligation to confirm the existence of its subject-matter jurisdiction, the court will now turn to the substantive arguments advanced by defendants in support of their motions to dismiss.

### B.    Plaintiff's § 1983 claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety Div. of State Police, 411 F.3d 427, 433 (3d Cir. 2005).  The defendants in the instant suit satisfy the "acting under color of state law" requirement. Defendants HSHA and PSPCA were entities statutorily authorized to enforce Pennsylvania laws pertaining to criminal cruelty-to-animals violations under 18 Pa. Cons. Stat. § 5511.  (Doc. No. 20, ¶¶ 5, 13); see supra footnote 2.  Defendant Witmer was, during all relevant times, a humane society police officer for the HSHA authorized to enforce Pennsylvania's criminal cruelty laws in Cumberland County. (Doc. No. 20, ¶¶ 10-11, 15.)  Defendant Hopkins was likewise a humane society police officer for the PSPCA (id. ¶¶ 7-9, 15), and to the extent Hopkins acted while her certification was not properly registered, the complaint adequately alleges that she was acting as an employee and/or agent of the PSPCA, holding herself out as a state actor, and working in conjunction with Witmer, a state actor (id. ¶¶ 15, 21, 23-32, 49);

17

see Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) (noting that one is acting "under state color of state law for § 1983 purposes" when "he is a willful participant in joint action with the State or its agents") (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970)).  Finally, the complaint adequately identifies defendant Troutman as an agent and/or employee of HSHA acting within the scope of her duties and in conjunction with other state actors.  (See id. ¶¶ 12, 49(J), 56.)

The court will briefly address the arguments of HSHA and PSPCA that Allen improperly seeks to impose *respondeat superior* liability on them for alleged misconduct of their agents.  See City of Canton v. Harris, 489 U.S. 378, 685 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983.") (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694-95 (1978)).  Specifically, HSHA and PSPCA contend that Allen "cannot as a matter of law advance a municipal liability claim against [them] because he cannot establish that any alleged municipal custom, practice or policy was the moving force behind a constitutional violation by a state actor."  (Doc. No. 38, at 43-44; Doc. No. 35, at 31-32); see Monell, 436 U.S. at 690-91 (holding that municipalities and local governments are "persons" who may be sued under § 1983 for constitutional deprivations resulting from their policies, practices, and customs).  These arguments are without merit.  Allen has alleged that HSHA and PSPCA failed to provide adequate training and supervision to their humane society police officers regarding how to investigate and prosecute offenses in a manner that does not

18

violate the civil rights of a suspect.  (Doc. No. 20, ¶¶ 16-20, 49-55, 69-78.)  Allen
alleges that this policy or practice of inadequately preparing and monitoring
humane society police officers amounted to deliberate indifference for his
constitutional rights and caused the constitutional violations for which he now
seeks relief.  (id.); see City of Canton, 489 U.S. at 388-92 (holding that a policy of
inadequate training may serve as the basis for § 1983 municipal liability where the
failure to train amounts to deliberate indifference to the rights of persons with
whom the entity's agents/employees come into contact).

　　　According to Allen, the PSPCA permitted defendant Hopkins "to continue a
course, pattern, and practice of improper, unlawful, and malicious conduct."  (Id. ¶
46); (see also id. ¶ 70) (alleging that both PSPCA and HSHS "ratified, endorsed,
acquiesced in, or approved the course of action of their respective employees and
conspired with them to commit the violations alleged herein").  Whether Allen will
be able to *establish* that the PSPCA and/or HSHA's custom, practice, or policy was
the moving force behind Witmer and Hopkins' actions is not a question presently
before the court; rather, the inquiry on a motion to dismiss is whether Allen has
adequately *alleged* a basis for holding these entities liable.  At this time, the court is
unable to say that "it appears beyond doubt that [Allen] can prove no set of facts in
support of [his] claims which would entitle [him] to relief."  Wilson v. Rackmill, 878
F.2d 772, 775 (3d Cir. 1989) (quoting Wisniewski v. Johns-Manville Corp., 759 F.2d
271 (3d Cir. 1985)).  Accordingly, the court will deny HSHA and PSPCA's motion to

dismiss on the grounds that Allen cannot establish that they, as entities, are

responsible for the alleged constitutional violations discussed below.

### 1.      Claims relating to the search of Allen's home

Allen alleges that defendants Witmer and Hopkins violated his Fourth

Amendment right to be free from unreasonable searches when they improperly

procured and executed the search warrant on his farm.[12]  Allen further alleges that

HSHA and PSPCA should be held liable for their own participation in the search

and for ratifying and endorsing the unconstitutional conduct of their agents.  (See

Doc. No. 20, ¶ 16, 41, 46, 49(F)-(J), 50, 52-54.)  In support thereof, Allen claims that

the affidavit of probable cause contained allegations that were factually inaccurate

and omitted relevant and material information.  (Id. ¶¶ 25, 49, 55.)  According to

---

[12]  The court construes Allen's § 1983 claims relating to the procurement and
execution of the search warrant as arising under the substantive guarantees of the
Fourth Amendment, applicable to the states through the Fourteenth Amendment's
Due Process Clause.  The court does not understand the complaint to advance an
independent violation of the Fourteenth Amendment and, therefore, will decline to
address any legal arguments on this distinct subject area.  (See Doc. No. 38, at 28-
29.)
     The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and
> seizures, shall not be violated, and no Warrants shall Issue,
> but upon probable cause, supported by Oath or affirmation,
> and particularly describing the place to be searched, and
> the persons or things to be seized.

U.S. Const. amend. IV.

Allen, the correction of the misstatements and inclusion of the omitted material would have vitiated the magistrate's finding of probable cause.  (See id.)

In response, defendants unpersuasively contend that "[a]s a matter of law, the issuance of the warrant was supported by probable cause" (Doc. No. 38, at 29), and urge the court to focus "on what the affidavit includes, rather than on what it does not include" (id. at 30).[13]  (See also Doc. No. 54, at 2.)  The court finds this argument to be premature.  To state a § 1983 action based upon an invalid search warrant, the plaintiff must allege that (1) the state actor "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the warrant," and (2) that "such statements or omissions are material or necessary to the finding of probable cause." See Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (in the context of an arrest warrant).  Here, Allen alleges that the affidavit of probable cause contained factual inaccuracies and omitted material and relevant information, such as:  (1) Allen's

_____

[13]  Hopkins and PSPCA additionally argue that the complaint fails to state a claim against them premised on the procurement of the warrant because "the warrant on its face clearly establishes that HSHA and Witmer, not PSPCA and Hopkins, were the agency and the affiant, respectively, which applied for and procured the search warrant about which Allen now . . . complains." (Doc. No. 38, at 28; see Doc. No. 20-2.)  Hopkins and PSPCA cite no authority in support of this statement in their brief, and their argument that they are presumptively protected by the search warrant rings hollow, as the allegations in Allen's complaint support the inference that Hopkins and PSPCA were aware of the alleged misstatements and omissions in the warrant, but nevertheless conducted the search without regard for Allen's rights.  (See Doc. No. 20, ¶¶ 23-27, 49) (detailing, inter alia, Hopkins's involvement in the investigation of the citizen's complaint, obtaining the warrant, and executing the search).

willingness to cooperate with the authorities and have the animals promptly seen by a veterinarian; (2) how long he owned the animals; (3) what care and medication the animals were receiving; or (4) whether some or all were exempt from the cruelty-to-animals statute because they were animals used in a normal agricultural operation.  (Doc. No. 20, ¶¶ 25, 49(A)-(C), 55.)  He asserts that these misstatements and omissions were deliberate and argues that the warrant would not have issued, and the search would not have occurred, absent these misstatements and omissions.  (See id.)  At this early stage of the litigation, the court is unable to assess Witmer's mental state, evaluate her alleged misstatements and omissions, and determine what effect, if any, the they had on the validity of the warrant and constitutionality of the subsequent search.  The court concludes that Allen's allegations are sufficient to withstand defendants' motions to dismiss.

In their supplemental briefs, defendants argue that Allen cannot state a Fourth Amendment claim relating to the search because of the following statement by the superior court: "The trial court stated that it 'was of the view that the animals had been properly seized in accordance with the aforesaid statute.'  We agree."  (Doc. No. 71, at 16) (citation omitted).  Essentially, defendants urge that Allen is collaterally estopped from arguing that the seizure was improper.  However, as will be discussed below in more detail, for collateral estoppel, or issue preclusion, to apply, "[t]he identical issue must have been necessary to final judgment on the merits."  Bortz v. W.C.A.B. (Reznor Div. of FL Indus.), 683 A.2d

259, 261 (Pa. 1996) (quoting <u>Balent v. City of Wilkes-Barre</u>, 669 A.2d 309, 313 (Pa. 1995)).  In reviewing Allen's motion under Rule 588 of the Pennsylvania Rules of Criminal Procedure, the state trial and appellate courts were required to determine only whether Allen was entitled to lawful possession of non-contraband seized property; such an adjudication does not require any evaluation of the lawfulness of the warrant or search themselves.  <u>See</u> Pa. R. Crim. P. 588(A), (B); <u>compare with</u> Pa. R. Crim. P. 581 (permitting a defendant to move for suppression of evidence allegedly obtained in violation of his rights).  Thus, the Pennsylvania Superior Court's statements regarding the validity of the warrant and search were *obiter dicta,* unnecessary to the court's determination of whether Allen was entitled to the return of his animals.  Accordingly, the court finds that these statements are not entitled to preclusive effect.

Finally, defendants take issue with Allen's contention that defendants Witmer, Hopkins, and their agencies exceeded the scope of the warrant by executing it with "twenty five assorted and unnecessary individuals and entities" who "had no legitimate purpose in being present to trespass upon [his] property and invade his privacy."  (<u>Id.</u> ¶ 27.)  They explain that this manpower was both reasonable and necessary, given the size of Allen's property and the objects of the search.  This argument is premature.  Its acceptance would require the court to adopt unilaterally the defendants' proffered justifications for the presence of third parties.  On a motion to dismiss, however, the court is directed to evaluate

allegations of a plaintiff's complaint to determine whether a claim has been stated. The United States Supreme Court has held that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not to aid in the execution of the warrant." Wilson v. Layne, 526 U.S. 603, 614 (1999). Allen's allegation that third parties with no legitimate law-enforcement purpose were present during the execution of the search warrant is sufficient to withstand defendants' motions to dismiss on this ground.

In conclusion, the court finds that plaintiff has adequately stated a claim against Witmer, Hopkins, and their respective agencies for alleged violations of the Fourth Amendment arising from the search of his property and the inclusion of various third parties in the same.

### 2. Claims relating to retention of animals

Allen also asserts claims under the Fourth, Fifth, and Fourteenth Amendments arising from (1) the retention of his animals by Witmer, Hopkins, Troutman, PSPCA, and HSHA after the charges against him were dismissed in 2004 and (2) the inadequacy of the state measures designed to insure the proper return of his seized animals.[14] (Doc. No. 20, ¶¶ 41- 45, 49-56.) These claims fail, however,

---

[14] Paragraph 49 of Allen's amended complaint sets forth § 1983 claims against Witmer, Hopkins, PSPCA, and HSHA for violations of his Fifth and Fourteenth Amendment rights, while paragraph 56 names "all Defendants" and refers to Allen's Fourth Amendment rights as well as those protected under the Fifth and Fourteenth Amendments. (See also Doc. No. 20, ¶ 49(J)) (alleging that "[a]ll Defendants have failed and/or refused to return Plaintiff's animals despite the

because this court must give preclusive effect to the Pennsylvania Superior Court's finding that the property was contraband and that Allen could have no legitimate property interest in the animals.  Without a constitutionally protected property interest in the animals, Allen cannot claim that their prolonged seizure violated the Fourth Amendment or that it amounted to a Fifth Amendment taking, nor can he claim that he was denied due process with respect to his efforts to have the animals returned to him.

Federal courts look principally to state law to determine the effect of a state-court judgment.  Lance, 126 S. Ct. at 1202-03.  In Pennsylvania, collateral estoppel, or issue preclusion, has been defined as:

> [A] doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated.  The identical issue must have been necessary to the final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question.

Bortz, 683 A.2d at 261 (quoting Balent, 669 A.2d at 313).  To apply the principles of collateral estoppel in the instant case, the court must therefore be satisfied that:  (1) there has been a final judgment on the merits; (2) Allen's interest in the seized animals was actually litigated and necessary to the judgment; (3) Allen was a party to the prior action; and (4) Allen had a full and fair opportunity to litigate this issue.

---

disposition of his case").  For the purpose of this section, the court will read Allen's complaint as setting forth his claims regarding the retention of his property as against all defendants under the Fourth, Fifth, and Fourteenth Amendments.

See id.; see also R.W. v. Manzek, 888 A.2d 740, 748 (Pa. 2006).

The superior court issued its ruling on Allen's Rule 588 appeal in an unpublished memorandum decision. Such decisions may be relied upon or cited when relevant for preclusion purposes.[15] The superior court's ruling on Allen's appeal qualifies as a final judgment on the merits, contrary to Allen's assertion that he is in the process of seeking leave to appeal to the state supreme court. Under Pennsylvania law, "a judgment is final for purposes of res judicata and collateral estoppel unless and until reversed on appeal." Yonkers v. Donora Borough, 702 A.2d 618, 620 (Pa. Commw. Ct. 1997) (citing, inter alia, Shaffer v. Smith, 673 A.2d 872 (Pa. 1996)); cf. Marks v. Nationwide Ins. Co., 762 A.2d 1098, 1101 (Pa. Super. Ct. 2000) ("[W]e have long held that as long as the decision has not been overturned by our Supreme Court, a decision by our Court remains binding precedent.") (citation omitted). Accordingly, Allen's pending request for an appeal does not destroy the finality of the superior court's judgment for collateral estoppel purposes, Yonkers, 702 A.2d at 620, and the first element of the court's collateral estoppel inquiry is met.

---

[15] The Pennsylvania Superior Court's internal operating procedures provide:

> An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of the law of the case, res judicata, or collateral estoppel . . . .

Pa. Super. Ct. I.O.P. 65.37(A).

The second element is satisfied because the lawfulness Allen's property interest was actually litigated and necessary to the adjudication of his Rule 588 motion.  By its own terms, Rule 588 directs the trial court to evaluate whether the movant is "entitled to lawful possession" of the property at issue and to determine whether the "property is contraband, in which case the court may order the property to be forfeited."  Pa. R. Crim. P. 588(A), (B); see Petition of Koenig, 663 A.2d 725, 726 (Pa. Super. Ct. 1995) (explaining that the Rule 588 movant has the initial burden of establishing lawful possession of the property, at which time the burden shifts to the Commonwealth to show that the property is contraband or derivative contraband).  In his appellate brief to the superior court, Allen specifically challenged the failure of the trial court to identify his property as non-contraband.  (Doc. No. 51, at 51, Ex. G) ("The Trial Court erred in not finding that the animals seized by the Commonwealth and owned by [Allen] were non-contraband in nature pursuant to the Rules of Criminal Procedure.").  The superior court explained that "the adequacy of monetary judgment in lieu of the return of property," one of Allen's primary arguments on appeal, "is not an issue unless it has been determined that [Allen] is entitled to the return of his property."  (Doc. No. 71, at 17.)  The superior court answered this threshold inquiry in the negative, concluding "that the animals seized did, in fact constitute derivative contraband, in that they were subject of an unlawful act under 18 Pa.C.S.A. § 5511(c)" and finding "that the trial court erred in concluding that they were not contraband."  (Id. at 18.)

Although the superior court affirmed the trial court's monetary award, the evaluation of Allen's property interest in the animals was a necessary step in the court's determination of whether the monetary award was adequate relief for Allen's alleged injuries.

The remaining two elements are also met here – Allen was the movant in the state-court proceedings, and he had a full and fair opportunity to establish his property interest in the animals at that time.  Accordingly, the court must give preclusive effect to the superior court's finding that the animals were contraband.

Because Allen cannot establish a constitutionally protected property interest in the animals, he is unable to assert that defendants' retention of the same was an unlawful seizure or taking.  Additionally, without a constitutionally protected property interest, Allen cannot challenge the adequacy of the Commonwealth's procedures with respect to seeking the return of the animals.  Hence, Allen's Fourth, Fifth, and Fourteenth Amendment claims relating to the retention of his animals fail as a matter of law and will be dismissed.

### 3. *Claims relating to Allen's criminal prosecution*

#### i. **Defendants Witmer, Hopkins, PSPCA, and HSHA**

Allen asserts that defendants Witmer, Hopkins, PSPCA, and HSHA violated his constitutional rights through their repeated and allegedly improper efforts to prosecute him for violations of Pennsylvania's cruelty-to-animals laws.  The complaint alleges violations of Allen's substantive due process rights, his

constitutional right to be free from double jeopardy, and his Fourth Amendment right to be free from malicious prosecution.

### a. *Substantive due process claim against Hopkins and PSPCA*

Plaintiff argues that Hopkins and her agency violated his substantive due process rights when Hopkins commenced criminal proceedings against him: (1) on March 17, 2004, and April 6, 2004, knowing that she lacked the authority to bring such charges because she was not registered as a humane society police officer in Cumberland County; and (2) on April 6, 2004, and April 8, 2004, knowing that she could not legally re-file the same charges that had been dismissed by Judge Schulenberger.  (See Doc. No. 20, ¶¶ 9, 31-38, 49(E)-(I), 55, 57); (Doc. No. 20-3, at 3) (citing Order, Philadelphia County C.P. Ct., October 31, 2000, recorded in Cumberland County, April 7, 2004); see also Johnson v. Chester, 10 F. Supp. 2d 482, 487, 489 (E.D. Pa. 1998) (allowing to proceed, on a motion to dismiss, plaintiff's unchallenged claim "that defendants knowingly and in violation of her Fifth Amendment rights placed her in double jeopardy by prosecuting her a second time on those same charges").

The Supreme Court has explained that the "touchstone of due process is protection of the individual against arbitrary action of government." County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).  In County of Sacramento, the Court further held that a person's substantive due process rights are violated only when executive action is "conscience shocking, in a constitutional sense." Id. at 846-47.

Defendants Hopkins and PSPCA argue that Hopkins's failure to register in Cumberland County was a simple administrative oversight not rising to a level of a constitutional violation.  This argument overlooks Allen's allegations that these charges were maliciously filed by Hopkins with full knowledge of the critical "oversight" which deprived her of any authority to file such charges.[16]  Additionally, without citation to meaningful authority, defendants Hopkins and PSPCA posit that "prosecution in contravention of the double jeopardy clause cannot, as a matter of law, amount to an abuse of official power such that it shocks the conscience."  (Doc. No. 38, at 36) (internal brackets and quotation marks omitted).  The court is unpersuaded that these arguments require dismissal of Allen's substantive due process and double jeopardy claims against Hopkins and PSPCA at this juncture.  The court is likewise unconvinced by defendants' passing statement that they should be afforded prosecutorial immunity for their involvement in Allen's criminal prosecution.[17]  (Id.)

---

[16]  This argument also does not account for Hopkins's filing of charges against Allen on April 6, 2004, two days before she corrected the registration defect which resulted in Judge Schulenberger's dismissal of the charges against Allen on April 5, 2004.  (See Doc. No. 20, ¶¶ 32-37); (see also Doc. No. 20-3, at 3) (citing Order, Philadelphia County C.P. Ct., October 31, 2000, recorded in Cumberland County, April 7, 2004).

[17]  Defendants Hopkins and PSPCA urge that "Hopkins is entitled to absolute prosecutorial immunity because her actions were taken within the scope of her duties in initiating and pursuing a prosecution."  (Doc. No. 38, at 36-37.)  It is well accepted that "[t]he burden to establish prosecutorial immunity is on the prosecutor," who must "demonstrate that absolute immunity should attach to each act he allegedly committed that gave rise to the cause of action."  Light v. Haws, 472 F.3d 74, 78, 80 (3d Cir. 2007).  Hopkins and PSPCA's passing reference to the

 

 

        **b.**     ***Malicious prosecution claims against Witmer,***
             ***Hopkins, PSPCA, and HSHA***

     Allen also asserts Fourth Amendment malicious prosecution claims against

defendants Witmer, Hopkins, and their respective agencies.  To state a claim for

malicious prosecution under the Fourth Amendment, a plaintiff must allege that:

"(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding

---

doctrine of absolute prosecutorial immunity, and citations to the cases of <u>Imbler v.
Pachtman</u>, 424 U.S. 409 (1976), and <u>Butz v. Economou</u>, 438 U.S. 478, 507 (1978), fail
to sustain this burden.  Hopkins filed the criminal charges against Allen that gave
rise to the initial trial before Judge Schulenberger, but it is unclear whether she
acted in the capacity of a prosecutor during that trial.  Furthermore, during the trial
before Judge Bender, the record demonstrates that the district attorney's office
represented the Commonwealth in the proceedings.  (Doc. No. 27, Ex. E, at 2-3, Tr.
of proceedings before Judge Bender) (Michael Shearer, Esq.: "I was appointed
temporary special assistant district attorney for the purposes of a prosecuting this
case.").  In the second trial, Hopkins is identified, not as the prosecutor of the
action against Allen, but as a humane society police officer and the affiant of the
criminal complaint.  (<u>Id.</u>)  In her capacity as police officer and complaining witness,
Hopkins is, at best, entitled to qualified immunity.  <u>See</u> <u>Kalina v. Fletcher</u>, 522 U.S.
118, 129-31 (1997) (prosecutor not entitled to absolute prosecutorial immunity
"when she was acting as a complaining witness rather than a lawyer when she
executed the certification [of probable cause] '[u]nder penalty of perjury'"); <u>Malley
v. Briggs</u>, 475 U.S. 335, 338, 340, 343 (1992) (state trooper who submitted criminal
complaints and arrest warrants to the state trial judge attempted to assert absolute
immunity from plaintiff's civil rights complaint, but the Court held that "the judicial
process will on the whole benefit from a rule of qualified rather than absolute
immunity" in such a context); <u>Kulwicki v. Dawson,</u> 969 F.2d 1454, 1467-68 (3d Cir.
1992) (defendant police officer who allegedly participated in, <u>inter</u> <u>alia</u>, "initiating
the prosecution," is, "as a police officer, . . . . only entitled to qualified immunity");
<u>see also</u> <u>Pierson v. Ray</u>, 386 U.S. 547, 555 (1967) ("The common law has never
granted police officers an absolute and unqualified immunity, and the officers in
this case do not claim they are entitled to one.").  However, the allegations of
Hopkins's lack of authority to file charges (<u>see</u> Doc. No. 20, ¶¶ 9, 31-33) are
problematic to an assertion of qualified immunity.  Suffice it to say that, absent
more compelling record evidence, the court is unable to conclude that Hopkins is
entitled to either absolute or qualified immunity.

ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 1998)).  The Third Circuit has recognized that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure"; however, "attendance at trial d[oes] not [itself] qualify as a Fourth Amendment seizure." Johnson, 477 F.3d at 85 n.14 (quoting DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005)).  Allen has not alleged that he suffered any deprivation of liberty as a result of the criminal charges filed by defendants, other than his attendance at his trials.  Trial attendance does not qualify as a deprivation of liberty sufficient to support a Fourth Amendment malicious prosecution claim.  See id. Hence, Allen's malicious prosecution claim against Witmer, Hopkins, PSPCA, and HSHA must fail because he has not alleged this essential element.

For the foregoing reasons, Allen has sufficiently alleged constitutional claims against Hopkins and PSPCA arising from his criminal prosecution insofar as he seeks to hold them liable for alleged violations of his right to due process and right to be free from double jeopardy.  Allen has not, however, stated malicious prosecution claims grounded in the Fourth Amendment against any of these defendants.

## ii.    Defendant Troutman

Allen makes no specific allegations of unconstitutional or tortious conduct committed by Troutman (see Doc. No. 20), nor does he articulate the relationship, if any, that Troutman has with defendants Witmer and Hopkins.  On occasion, Allen refers to "defendants" generally.  (See, e.g., id. ¶¶ 55-57, 61-63.)  However, given Allen's specific allegations relating to the initiation and continuation of the criminal charges against him (see id. ¶¶ 29-38, 49), the court finds that general references to "defendants" are insufficient to give Troutman notice of any federal or state claims asserted against her.  Thus, Allen's claims relating to the illegality of his prosecution will be dismissed insofar as he intended to assert them against Troutman.  Allen will be granted leave to file a second amended complaint containing a more definite statement to clarify which claims, if any, are asserted against Troutman.

## C.    Plaintiff's state-law claims

### 1.    *Malicious prosecution*

In Count II of his amended complaint, Allen alleges that defendants Witmer, Hopkins, PSPCA, and HSHA maliciously and without probable cause "initiated, prosecuted, and continued to prosecute criminal proceedings against [him]" and that the proceedings terminated in his favor.  (Doc. No. 20, ¶¶ 61-66); see also supra subsection B.3.ii (explaining that the complaint gives insufficient notice to defendant Troutman whether claims arising out of Allen's prosecution are being asserted against her).  Defendants cite the case of Ritzel v. Pennsylvania Society for

33

the Prevention of Cruelty to Animals, No. 04-2757, 2005 WL 331518, at *5 (E.D. Pa.

Feb. 9, 2005), for the proposition that "an action for malicious prosecution does not

lie under Pennsylvania law for criminal prosecution." (Doc. No. 38, at 44; see also

Doc. No. 35, at 36-38.)  Defendants fundamentally misapprehend the district court's

ruling in Ritzel.  In that case, the plaintiff asserted that the defendants, the PSPCA

and Hopkins, violated 42 Pa. Cons. Stat. §§ 8351-54, commonly referred to as the

"Dragonetti Act," which codifies the tort of malicious use of *civil* process in the

Commonwealth of Pennsylvania.  Ritzel, 2005 WL 331518, at *5.  Because the

proceedings at issue were *criminal* proceedings under the cruelty-to-animal laws,

the court found that the Dragonetti Act did not apply and dismissed plaintiff's

Dragonetti Act claims.  Id.  Defendants' attempt to read Ritzel for the proposition

that there is no cause of action for malicious prosecution is unsupported by the text

of the case and by applicable state law.

In Pennsylvania, "in order to sustain a cause of action for malicious

prosecution relating to a criminal prosecution, the plaintiff must prove that the

defendant:  (1) instituted proceedings against the plaintiff, (2) without probable

cause, (3) with malice, and (4) that the proceedings were terminated in favor of the

plaintiff."  Corrigan v. Central Tax Bureau of Pa., 828 A.2d 502, 505 (Pa. Commw.

Ct. 2003) (citation omitted); accord Haefner v. Buckey, 626 A.2d 519 (Pa. 1993);

Bradley v. General Acc. Ins. Co., 778 A.2d 707 (Pa. Super. Ct. 2001); Gallucci v.

Phillips & Jacobs, Inc., 614 A.2d 284 (Pa. Super. Ct. 1992); see also Johnson, 477

F.3d at 78, 86 (acknowledging plaintiff's state-law claim for malicious prosecution and directing the trial court to vacate its order remanding the claim to state court).

Defendants argue that Allen's claims must fail because the charges were filed neither maliciously nor without probable cause. Allen has alleged that the charges were made maliciously and in knowing violation of his federal and state rights, which is sufficient to withstand the motions to dismiss. With respect to probable cause, defendants argue that Judge Bender's conviction of Allen on all counts prevents his assertion that the proceedings were instituted without probable cause. The Third Circuit has directed, however, that state-law convictions overturned on appeal do not "conclusively establish probable cause and necessarily negate any possibility that [a claimant] could establish her § 1983 malicious prosecution claim." Montgomery v. DeSimone, 159 F.3d 120, 122 (3d Cir. 1998); cf. Ashford v. Bartz, No. 04-643, 2006 WL 208802 (M.D. Pa. Jan. 26, 2006) (declining to dismiss false arrest charges on the ground that the district justice found that probable cause existed for the arrest and that plaintiff was guilty of disorderly conduct because such evidence, while "highly probative evidence that Defendants had probable cause to arrest Plaintiff . . . is not dispositive as a matter of law"). Defendants rely, in part, on this court's decision in Barshinger v. Buffington, No. 03-506, 2004 WL 3607974 (M.D. Pa. June 10, 2004). However, Barshinger is inapposite. It is a summary judgment ruling based upon a finding of insufficient evidence to support plaintiffs' claims. Id. at *1, *7-8; (see Doc. No. 35, at 25-26). This court specifically found that Barshinger

"presented no evidence that the . . . citations suffered from a lack of probable cause." Barshinger, 2004 WL 3607972, at *8.  In the matter *sub judice*, the court need only determine whether Allen is "entitled to offer evidence to support his claims," not whether his evidence is sufficient to go to trial.  See Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc., 280 F.3d 278, 283 (3d Cir. 2002) (citation omitted).

Defendants next argue that Allen has failed to assert that he was actually "innocent" of the various criminal charges.  (Doc. No. 53, at 10) (citing Hector v. Watt, 235 F.3d 154 (3d Cir. 2000), wherein the court stated that a malicious prosecution plaintiff "face[s] the problem that . . . [he] must be innocent of the crime charged in the underlying prosecution," but ultimately "did not need to address the complexities of [its] malicious prosecution jurisprudence" because the plaintiff advanced no malicious prosecution claim).  Viewing Allen's pleadings in the light most favorable to him, the court finds that Allen has set forth this final element of a *prima facie* case of malicious prosecution.  Allen's allegations that the animals were being treated for their ailments, had received appropriate medications, and had long-standing conditions existing prior to his receipt of the animals, as well as his contention that some or all of the animals fall within the "normal agricultural exception" to the animal cruelty statutes, can be construed as an assertion of actual innocence of some or all of the charges.  (See Doc. No. 20, ¶¶ 4, 23, 49(A)-(C), 63.)

Moreover, the Third Circuit has explained that "[a]ctual innocence is not required for a common law favorable termination, and a dismissal of charges on double jeopardy grounds is a common law favorable termination."  Smith v. Holtz, 87 F.3d 108, 113 (3d Cir. 1996) (citing Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993); Restatement of the Law of Torts §§ 659, 660 (1938)); see Haefner, 626 A.2d at 521 ("Appellant argues that the declaration of a mistrial in the first criminal proceeding against him and the subsequent quashing of the indictment by the Superior Court represents termination in favor of appellant.  We agree.").  The Pennsylvania Supreme Court has generally adopted the Restatement (Second) of Torts approach with respect to malicious prosecution claims.  See Haefner, 626 A.2d at 521.  Section 659 of the Restatement provides that "[c]riminal proceedings are terminated in favor of the accused by:  (a) a discharge by the magistrate at a preliminary hearing, or . . . (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or . . . (f) a final order in favor of the accused by a trial or appellate court."  See id. (quoting Restatement (Second) Torts § 659 (1977)).  The withdrawal of the charges, dismissal of the same, and quashing of Allen's conviction likely fall within the ambit of "criminal proceedings . . . terminat[ing] in favor of the accused."  See Restatement (Second) Torts § 659.

In their supplemental submissions, defendants contend that the Pennsylvania Superior Court's conclusion that Allen violated the cruelty-to-animal laws forecloses his argument that his prosecution was initiated without probable cause. In particular, they refer to the superior court's explanation that "what [Allen] may have intended to do with the animals does not change the fact that the condition of the animals at the time they were seized rendered [Allen] in violation of Section 5511(c)(1)." (Doc. No. 71, at 18) (footnote in original omitted). The Pennsylvania Superior Court also recognized that "[Allen] himself admitted that the animals were in need of food, water, and or veterinary care." (Doc. No. 71, at 17.) Defendants' attempt to invoke collateral estoppel against Allen in this context fails for the same reason it failed in the context of the search: the issue was not "necessary to final judgment on the merits." See Pa. R. Crim. P. 588(A), (B); see also Bortz, 683 A.2d at 261 (citation omitted). In the Rule 588 proceedings, the court was required only to determine whether the animals were contraband or derivative contraband, not *whose* actions caused the animals to become derivative contraband. Accordingly, the court's statements are not entitled to preclusive effect and will not prevent Allen from stating a claim for malicious prosecution under state law.

Alternatively, defendants PSPCA and HSHA claim that they are immune from Allen's state-law tort claims pursuant to Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"), 42 Pa. Cons. Stat. § 8541-64.[18] Defendants'

_____

[18] 42 Pa. Cons. Stat. § 8541 provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury

38

argument relating to the PSTCA consists of a cursory explanation of <u>Taylor v.</u>

<u>North</u>, No. 96-3666, 1996 WL 482985, at *2 (E.D. Pa. Aug. 15, 1996), a case in which

the district court concluded, with little discussion, that the state tort claims against

PSPCA were barred.  Whether PSPCA and HSHA are local agencies covered by the

PSTCA is not as clear as defendants suggest.  In 2001, the Court of Common Pleas

for Fayette County considered a motion for summary judgment by The Fayette

County Society for the Prevention of Cruelty to Animals Inc. based upon PSTCA

---

to the person or property caused by any act of the local agency or an employee
thereof or any other person."  42 Pa. Cons. Stat. § 8541; <u>see</u> <u>id.</u> § 8542 (enumerating
the exceptions to governmental immunity).

Additionally, the Act contains a defense of official immunity, which applies in
"any action brought against an employee of a local agency for damages on account
of an injury to a person or property based on claims arising from, or reasonably
related to, the office or the performance of the duties of the employee."  <u>Id.</u> § 8546;
<u>see also</u> <u>id.</u> § 8545.  The defense of official immunity permits the employee to assert,
or the local agency to assert on his behalf:

    (1)   Defenses which are available at common law to the employee.

    (2)   The defense that the conduct of the employee which gave rise
        to the claim was authorized or required by law, or that he in
        good faith reasonably believed the conduct was authorized or
        required by law.

    (3)   The defense that the act of the employee was within the
        policy making discretion granted to the employee by law. . . .

<u>Id.</u> § 8546.  The defense of official immunity is not available to a local agency
employee when it is "judicially determined that the act of the employee caused the
injury and that such act constituted a crime, actual fraud, actual malice or willful
misconduct."  <u>Id.</u> § 8550; <u>see</u> <u>Kuzel v. Krause</u>, 658 A.2d 856, 859 (Pa. Commw. Ct.
1995); <u>see also</u> <u>Vonstein v. Society for the Prevention of Cruelty to Animals</u>, 24 Pa.
D. & C.4th 474, 1993 WL 811732 (Lycoming County C.P. Ct. 1993) (rejecting
defendants' arguments that they were entitled to official immunity from plaintiff's
malicious prosecution claim because "[a]n action for malicious prosecution
necessarily involves the element of malice.").

immunity.  <u>Tabaj v. Fayette Society for the Prevention of Cruelty to Animals Inc.</u>, 53

Pa. D & C.4th 399, 2001 WL 1808561 (Fayette County C.P. Ct. 2001), <u>aff'd mem.</u> 828

A.2d 409 (Pa. Super. Ct. 2003).  After discussing the purpose of the PSTCA and

those entities which have been considered "local agencies" by the state courts, the

trial court in <u>Tabaj</u> rejected the Fayette County SPCA's assertion that it was

entitled to immunity.  <u>Id.</u> ("[O]ur research has revealed no instances where a

defendant, such as the one now before this court[,] has been afforded local agency

status under the Political Subdivision Tort Claims Act.").  Allen has challenged the

applicability of the PSTCA to PSPCA and HSHA, claiming that their classification

as private charitable corporations would "disqualify the organization[s] as []

political subdivision[s]" or local agencies covered by the Act.  (Doc. No. 50, at 35;

Doc. No. 60, at 8; Doc. No. 49, at 23; Doc. No. 61, at 5-6.)  Defendants have not

responded to Allen's arguments regarding the entities' legal status other than to

refer once again to <u>Taylor</u>.  In light of defendants' conclusory assertions that the

PSTCA applies to them and the conflicting caselaw on the subject, the court has an

inadequate record upon which to conclude that the PSTCA affords defendants the

protections they claim.

Finally, defendants Witmer and HSHA persuasively argue that their liability

should not extend to the actions taken solely by Hopkins and PSPCA after Witmer

withdrew the initial citations.  (Doc. No. 35, at 32-33.)  Upon review of the complaint,

the court agrees that Allen has not alleged any efforts by Witmer to prosecute him

after she withdrew the initial criminal charges on March 17, 2004, nor has Allen

articulated a basis to hold HSHA responsible for the actions taken by another legal

entity (and its agent).  Accordingly, Allen's state-law claims for malicious

prosecution may proceed against defendants Witmer, Hopkins, and their respective

agencies; however, the claims against Witmer and HSHA shall be limited to the

period of time during which they were actually involved in the prosecution efforts.

### 2.   *Defamation & civil conspiracy*

The parties dispute whether Allen has set forth claims for defamation and

civil conspiracy.  Allen's amended complaint is structured to assert two counts

under § 1983 (Counts I and III) and one count under state law for malicious

prosecution (Count II).  (Doc. No. 20.)  Defendants, therefore, argue that Allen has

not sought relief for any other state-law violations and that his inclusion of

references to defamatory statements and civil conspiracies should be stricken from

the amended complaint as improper and irrelevant.  (<u>See</u> Doc. No. 35, at 40-42); (<u>see</u>

<u>also</u> Doc. No. 54, at 3) ("[I]t is not clear on the face of Plaintiff's First Amended

Complaint whether plaintiff is claiming slander, libel, and/or conspiracy and against

which parties if such claims are being asserted.").  Allen, in turn, asserts that his

allegations adequately set forth a claim for defamation and he seeks relief for such

tortious conduct.  (Doc. No. 49, at 31-33.)  Allen does not squarely address

defendants' contentions regarding his conspiracy allegations.

The court agrees that is unclear whether, and against whom, Allen is asserting defamation and/or civil conspiracy claims.  The allegations relating to defamation primarily appear in paragraph 39 of his 80-paragraph complaint, which by its own terms purports to set forth claims only under § 1983 and state malicious prosecution law.  (Doc. No. 20.)  Similarly, Allen's references to conspiracy and acting in concert are conclusory and scattered throughout the complaint.  (Doc. No. 20, ¶¶ 16, 21, 56, 77.)  Thus, the court finds that Allen's amended complaint fails to state claims for defamation and civil conspiracy, but will grant him leave to file a second amended complaint containing a more definite statement of these claims. Should Allen choose to file a second amended complaint clearly seeking relief for these purported state-law violations, he is advised to articulate the actions allegedly taken by each defendant, rather than referring to "defendants" collectively.

## IV. CONCLUSION

In conclusion, Allen will be permitted to proceed against defendants Witmer, Hopkins, HSHA, and PSPCA on his § 1983 claims related to their allegedly unlawful search of his property, and against Hopkins and PSPCA for their improper attempts to convict him criminally.  Allen will additionally be able to pursue his state-law claim for malicious prosecution against defendants Witmer, Hopkins, HSHA, and PSPCA, though the claim against Witmer and HSHA shall not include the period of time after Witmer withdrew the charges.

In light of the Pennsylvania Superior Court's ruling that the animals seized pursuant to the warrant were derivative contraband – a finding to which this court must give preclusive effect – Allen's claims relating to the seized animals cannot survive defendants' motions to dismiss.  Thus, the court will dismiss Allen's claims under the Fourth, Fifth, and Fourteenth Amendments arising from (1) defendants' retention of his animals and (2) the alleged inadequacy of the state measures designed to insure the proper return of the seized animals.

Finally, the complaint gives insufficient notice to defendants whether, and against whom, Allen is seeking relief under state law for defamation or civil conspiracy, and which claims, if any, are asserted against defendant Troutman. The court will dismiss these claims without prejudice and grant Allen leave to file a second amended complaint containing a more definite statement of these claims, should he choose to assert them.

An appropriate order will issue.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:     May 14, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT LEE ALLEN,** | : | **CIVIL ACTION NO. 1:06-CV-0247** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE PENNSYLVANIA SOCIETY** | : | |
| **FOR THE PREVENTION OF** | : | |
| **CRUELTY TO ANIMALS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 14th day of May, 2007, upon consideration of defendants'

motions to dismiss (Doc. Nos. 27, 28) and the opposition thereto, and for the reasons

set forth in the accompanying memorandum, it is hereby ORDERED that

defendants' motions are GRANTED in part as follows:

1. Plaintiff's § 1983 claims against all defendants relating to the retention of his animals are DISMISSED.

2. Plaintiff's § 1983 claims against all defendants for malicious prosecution in violation of the Fourth Amendment are DISMISSED.

3. Plaintiff's state-law malicious prosecution claim is DISMISSED against defendants Witmer and HSHA insofar as Plaintiff seeks to impose liability on these defendants for the time period after Witmer withdrew the criminal charges against him.

4. Plaintiff's state-law claims for defamation and civil conspiracy are DISMISSED for failure to state a claim. Plaintiff is granted leave to file a second amended complaint no later than ten (10) days from the issuance of this order containing a more definite statement of these claims and specifying which defendants said claims are asserted against.

> 5.   All claims against defendant Troutman are DISMISSED for failure to
>       state a claim.  Plaintiff is granted leave to file a second amended
>       complaint no later than ten (10) days from the issuance of this order
>       containing a more definite statement of which claims, if any, are being
>       asserted against Troutman.

The motions to dismiss are DENIED in part insofar as plaintiff's remaining claims

will be allowed to proceed.

It is further ORDERED that the motion for oral argument filed by defendants

HSHA, Witmer, and Troutman (Doc. No. 36) is DENIED as moot.

Furthermore, the parties are directed to submit an amended joint case

management plan with the court on or before **Friday, June 1, 2007**, after which the

court will issue a revised case management order.



    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge